# GRAFTON,

## FLANDERS *v.* DAVIS.

When a person makes a deed which conveys no estate, the land descends to his heir, who takes it unconditionally, and is not bound to restore the consideration received by his ancestor.

The tenant offered a deposition in evidence, and the demandant offered in evidence another deposition of the same witness, for the purpose of contradicting him. The questions were whether he had had a conversation with certain persons, and made certain remarks which were specified. It was contended that the demandant, having taken the deposition, thereby made the deponent his own witness, and could not put such questions to him. *Held*, that the questions were competent.

Where the answer to a question makes it immaterial, the question is not the ground of an objection.

A clause in a deposition contained a statement of certain facts which the witness was incompetent to prove. The tenant objected, and the clause was not read. Afterwards the tenant proved the facts. *Held*, that the demandant might then read the clause to the jury.

When the attesting witnesses to a deed are dead, there is no presumption that, if living, they would testify that the grantor was of sane mind at the time of the delivery of the deed.

The tenant in a writ of entry is not entitled to be allowed for the increased value of the land, by reason of improvements made by those to whom he has conveyed, but only for improvements made by himself and those under whom he claims.

It is the duty of the counsel, on each side, to see that none of their own papers, respectively, are given to the jury when they retire, containing incompetent evidence. It is a ground for setting aside the verdict, if papers are improperly given to the jury, unless it be done by assent, or unless there be something which should estop the opposing counsel from taking an objection on that account.

WRIT OF ENTRY to recover a tract of land in Haverhill, in this county.

At the trial upon the general issue, the demandant claimed the land as one of the heirs at law of his grandfather, Joseph Flanders, deceased, who died leaving three heirs at law, of whom the demandant was one, and his sister Nancy, who married Arthur L. Pike, was another. The demandant proved the execution of a deed from Mr. and Mrs. Pike, conveying to him all the interest of Mrs. Pike in the demanded premises, before the commencement of this suit.

The tenant proved that on the tenth day of September, 1827, Joseph Flanders conveyed the premises in suit to the town of Haverhill, and the question for the jury was, whether Joseph Flanders, on that day, possessed sufficient mental capacity to make such a conveyance.

It was in evidence that Flanders had a legal settlement in Haverhill, that in the month of September, 1827, he was in feeble health and unable to take care of himself, and that the deed to the town of Haverhill was in consideration that certain of his debts should be paid, and that he and his wife should be supported during their lives. The tenant contended that the deed of a person imbecile, and, therefore, not capable of making contracts, is voidable only and not void, and that neither the grantor nor his heir could avoid it without restoring the consideration received, so far as practicable, as the re-payment of debts or money paid by the grantee in consideration of the deed. The title of the tenant was by a deed from the town of Haverhill, dated on the 20th day of March, 1828. The demandant had never offered to restore the consideration. The objection was overruled by the court.

The tenant, before this suit was commenced, conveyed a part of the land to Cyrus Bradish. The tenant offered Eben F. Morse as a witness, who testified upon the *voir dire* that he had a warrantee deed from Bradish of the land, that upon receiving an indemnity from the selectmen of

Haverhill, he released Bradish from the covenants in that deed, and that Levi Bradish occupied the land under the witness, with an agreement that the witness should convey it to him with warranty, upon his paying a certain sum of money. The demandant objected to the witness as incompetent from interest, and he was excluded by the court.

The tenant offered in evidence the deposition to Dr. Bachelder, to show the mental condition of Joseph Flanders. The demandant then offered in evidence another deposition of Bachelder, taken by him subsequently, for the purpose of contradicting the witness to some extent.

In this deposition are the following questions and answers :

" 7.    Q. for P.    Have you, previous to this had conversations with Walter P. Flanders, his mother, Abigail Flanders and others, about this matter, and have you or not said to them, or either of them, that you thought that Joseph Flanders was not, at this time, capable of selling his farm, by reason of his imbecility of mind, and that his heirs could get it back if they should sue for it, or to that effect ?

Ans.   I have not.

8.    Q. for P.    Please state whether you had some conversation with Daniel Bachelder, respecting this matter, within a few months, and did you or not state to him that you could not remember any thing about Joseph Flanders' condition at the time above referred to, or to that effect ?

Ans.   I did have talk with Bachelder, and told him I could not tell exactly how it was, without referring to my books. I did refer to my books, and found what medicines I gave him."

The tenant excepted to these questions, upon the ground that the demandant having taken the deposition himself, could not put such questions to his own witness ; but the court permitted them, with the answers, to be read, to which the tenant excepted.

In the deposition of Hannah Flanders, the widow of

Joseph Flanders, which was produced by this demandant, there was a clause stating what the witness knew about a bond given for support, &c., through the instrumentality of the tenant. When the counsel for the demandant read the deposition, he omitted to read this clause, the tenant objecting. Afterwards, the fact stated by the witness in the clause was proved by the tenant, and the counsel for the demandant wished to read the clause, in order that the deposition might not be kept from the jury, and was permitted to do so by the court, on the ground that the fact having been proved by the tenant, the statement of it by the witness was merely immaterial, to which the tenant excepted.

It appeared that the attesting witnesses to the deed from Flanders to the town of Haverhill were dead. The court ruled that it was not to be presumed that those witnesses would, if living, testify that the grantor was of sound mind and capable of understanding the nature and effect of the conveyance, to which the tenant excepted.

The tenant made a claim for betterments. It appeared that neither the demandant nor his ancestor had been in actual possession of the premises since the tenant went into possession in the year 1827. The tenant himself had not made any improvements, excepting certain fences and a better cultivation of the soil. He conveyed a part of the land, and his grantee, or persons claiming under the grantee, erected buildings upon the premises. The court instructed the jury that the tenant was not entitled to the increased value of the premises, by reason of any improvements made thereon, unless they were made by the tenant, or those under whom he claimed, and that improvements made by persons to whom the tenant had conveyed, and who claimed under him, could not be taken into the account. To this instruction the tenant excepted.

Some parts of the deposition of Sally Martin, a witness for the demandant, were ruled out by the court, and the deposition went to the jury with other papers. The tenant

Flanders *v.* Davis.

moved that the verdict be set aside for that reason. Evidence of the circumstances under which the deposition went to the jury was laid before the court, the counsel for the demandant stating that he understood it went to them without objection.

Mr. *Wilcox*, one of the counsel for the defendant, testified as follows: " I was present at but part of the argument and most of the charge by the judge, in *Flanders* v. *Davis.* When that was completed, I passed across the bar to see if the papers were selected for the jury. As near as I now remember, I was handed a file of papers which contained, as I supposed, those selected for the jury. I saw that the papers of the defendant were there. I remarked to Mr. Morrison or Mr. Hibbard that depositions, any part of which had been ruled out by the court, should not go to the jury, and I suppose I pointed out the deposition of Joseph Flanders as one, though I recollect more distinctly the general remark; I do not remember that I noticed the deposition of Sarah Martin. If I did, it did not occur to me that any portion of it had been ruled out as inadmissible. It did not occur to me until after the verdict had been returned, that there was any error in this respect. It was a long trial, and I took but few minutes of the testimony."

The jury returned a verdict for the demandant, and estimated the value of the betterments at $53,00.

The tenant moved that the verdict be set aside on account of the rulings of the court as above stated.

*Quincy*, for the defendant.
The deed is not void, but voidable. 4 Cruise's Dig. 22; 4 Coke 125; 1 Lord R. 313; Highmore on Lunacy 113, 114, 116; 2 Greenl. Ev. 295; Story on Con. §§ 22, 23, 24; 5 Pick. 217; 11 Pick. 304. Grants of infants are parallel both in law and reason. Highmore 116; 3 Modern 308; 17 Wend. 119. Grants of infants are voidable only. 1 Hill 121; 17 Wend. 119; 1 N. H. Rep. 73. If parallel and

voidable, they may be ratified after the disability is removed. Story on Con. § 52; 10 Serg. & Rawle 114; 8 Taun. 35; 5 B. & A. 147; 8 Greenl. 405; 6 Greenl. 80; 11 Greenl. 11; 10 N. H. Rep. 561; 9 N. H. Rep. 436; 10 N. H. Rep. 194; 15 Mass. Rep. 220; 1 Hill 121. It cannot be avoided without returning the consideration, and placing the party, as near as may be, as before. 3 N. H. Rep. 455; 9 N. H. Rep. 298; 22 Pick. 18, 20, 457, 546; 23 Pick. 283; 6 Gill & Johns. 424. As to sales of personal chattels by infants. Reeves' Dom. Rel. 243, 259; 7 Cowen 179; 4 Cruise 142.

As to the testimony of Morse. He had no interest except under his contract with Bradish, to convey land with warranty, on Bradish's paying him a certain sum. This depended on the payment of money by Bradish. The contract was executory only. There was none then in force. If Bradish entitled himself to a deed, Morse might be compelled to convey, but not before. He had no interest in the event of the suit.

A disqualifying interest must be legal, certain. 1 Greenl. § 386. It must be real, and not merely apprehended by the party. There must be a liability immediate and direct to the party. A circuitous interest does not disqualify. 1 Greenl. Ev. § 394. The witness was not necessarily liable to the party to the record. If liable, he was so to a third party. If the effect of the judgment was only *probably* to make him liable, it was not enough. 1 Greenl. Ev. § 397.

He has no interest in the record as an instrument of evidence. A judgment is evidence against parties and privies. It must be prior to the conveyance; but here the judgment was subsequent to the conveyance. He is, therefore, not bound in any way. 1 Greenl. Ev. § 536; 1 Ad. & Ell. 783. But his interest was balanced. If liable on his warranty, he had a warranty over.

Flanders *v.* Davis.

*Morrison*, for the plaintiff.

The ruling was on the objection that the consideration should be returned. Whether a deed is void or voidable, is unimportant. A deed of a person *non compos mentis* is void. 1 Lord Raym. 313; Bac. Abr. Idiots (F.); Com. Dig. Idiots (D. 1); 12 Mass. Rep. 365; 3 Cruise 20; 1 Fonbl. Eq. B. 1, ch. 2, § 1. Powell on Con. 7; 1 Ch. Pl. 484. We wish no controversy about words. No one is bound by a void act which cannot be ratified, and a stranger may take advantage of its invalidity. Bac. Abr. (Void and Voidable,) (A.) (D.) (F.); 20 Johns. 528; 1 Fonbl. Eq. 80, note a. Perhaps the deed of a person *non compos mentis* is not void in this sense. Sanity is presumed until the contrary is proved. 2 Kent's Com. 451; Highmore 115; Com. Dig. Idiot (D. 4.) An inquisition is not conclusive, but may be controverted. 2 Atk. 412. They have been called void or voidable merely as respects the burden of proof.

A deed of an idiot is void, unless it is assented to on his recovering his reason. 2 Hill Abr. 285.

Privies in blood may show lunacy, but not strangers. Highmore 114. Upon all the authorities there is no difference as to the effect of void and voidable contracts, when they are entered into. Insanity must be proved, unless there be an inquisition, which shifts the burden of proof. Perhaps when he is sane he may ratify it; but if insane it is void as to him and his privies. It does not follow that a consideration must be returned, although the deed is void. There is no contract unless there is an assenting mind. The note of an infant is voidable, but it furnishes no consideration unless it is ratified. In a suit on it a consideration need not be returned. 7 N. H. Rep. 372; 10 N. H. Rep. 194. He may disregard his deed when of age, sue his grantee, and treat him as a trespasser, or may convey by deed to a third person, who will thus get a new title. 1 N. H. Rep. 75; 4 N. H. Rep. 441; 11 Johns. 539; 14 Johns. 124; 10 Pet. 58. *Emmons* v. *Murray*, Grafton co., Dec. term,

1844. It does not appear in any of the cases that the infant returned the consideration. In 10 Pet. 58, this very question about returning the consideration was raised, and decided that he need not return it. Perhaps after he is of age, and holds the consideration in his hands, he must return it: There is no averment of a return of the consideration in the writ *dum fuit non compos* in the Register. Jackson on Real Actions ch. 13, § 1. Such a defence as this is not stated in Jackson or Stearns on real actions. Perk. § 21; Bull. N. P. 172; 2 C. & P. 178; 7 D. & R. 614. In 3 Day (Conn.) 90, no return of the consideration was required. 5 Pick. 431. And such is the fair import of the case in 2 N. H. Rep. 435.

As to the admissibility of Morse. There was a deed from Davis to Bradish. The deed from Bradish to Morse passed the covenants in the deed from Davis to Bradish. Morse released the covenants to Bradish. He had an interest in the record as to matter of evidence. Morse has no title except from Davis, and Davis has it only from Haverhill. The town defends this suit and is a party. Judgment for the plaintiff would be conclusive. 2 Dougl. 517; 1 Phil. Ev. 324. A judgment for the defendant might be used by Morse, in a suit against him, because of the warranty in the deed from Davis. It would protect Davis, and would equally protect his grantee. Could Davis be forced to litigate the matter over again ? A quitclaim deed from Davis to Morse would protect Morse. 1 Lord Raym. 730. If he is not interested in the record, he is so in the event of the suit. He claims a part of this land. Bradish is in under him, under contract. It is immaterial whether the contract is performed or not. He claims the ownership of land. He has an interest to protect the possession. If the plaintiff recovers a writ of possession, he will turn him out. The sheriff must execute the writ. Bac. Abr. Execution (C.) 5; 6 Coke 52 (a); 1 Backus' Sheriff 191; Stearns 221; 3 Black. Com. 412; Com. Dig. Execution (A 5); 2

Wash. 169. One in possession cannot testify for the defendant in the ejectment. 5 Taun. 183; 12 Johns. 247; 1 Phil. Ev. 65. He is incompetent, if in possession of part of the land. 8 Cowen 290; 1 Cowen 122. No matter whether the witness is in possession, or has put some one in under him. 13 N. H. Rep. 207. Having a remedy by law does not balance his interest.

As to betterments, the court cannot go beyond the statute. We cannot see how we can be estopped.

As to Dr. Batchelder's testimony, we properly put the questions. We might refresh his memory in that way. As they had called him, we might test his memory. The answers made the questions immaterial.

As to Sally Martin. If the jury are directed to disregard the evidence, that is enough. Here was no error by the court. There was no intentional wrong. The question is addressed to the sound discretion of the court. The party was not injured by it. She describes Flanders' appearance. It was read by only one juror. It was not talked about. He had voted for the plaintiff before reading the deposition. The mere possibility of its having been read should not set it aside. The defendant's counsel had a chance to examine the deposition, and Mr. Wilcox gave the papers to the sheriff.

GILCHRIST, C. J. It is contended by the counsel for the defendant that the deed of a person imbecile, and, therefore, not capable of making contracts, is voidable only, and not void, and that neither the grantor or his heir could avoid it without restoring the consideration received, so far as practicable.

But when a man makes a deed which conveys no estate out of him, his estate descends in the ordinary way. His heir takes it subject to no condition implied from the mere facts that it was conveyed, and a consideration received therefor. There might or might not be circumstances

which would make the estate of the ancestor liable to repay the consideration received. If there were, it would not follow that it would be necessary for the heir to repay it, before he could recover the land. He does not take the land coupled with the condition of repayment.

The testimony of Dr. Batchelder stands on no other ground than it would have occupied had Dr. Batchelder been cross-examined by the plaintiff on the stand. The questions might have been even more leading than they were. The purpose was to detract, by the further examination and by his own answers, from the weight to which his original deposition would otherwise have been entitled, and we see no objection to the examination.

Secondly. The answers to the questions made the questions immaterial.

The clause in the deposition of Hannah Flanders was properly read. It became immaterial by the subsequent proof of the fact, and the deposition might have gone to the jury, even without this clause having been read, on the ground of its immateriality.

The presumption that deceased attesting witnesses to a deed would testify to the sanity of the grantor, does not exist. We may as well presume that they would testify to all other facts which their situation gave them probably the means of knowing, as that they would testify to this fact. And the citation from Greenleaf's Evidence at the bar, seems to corroborate this view.

The tenant has no claim to betterments. It is the increased value of the land, by reason of the buildings and other improvements made by the tenant, and those under whom he claims, that the jury may give the tenant, and the value of no other improvements. This is a statutory right only, and we are governed by the statute.

It is the duty of the counsel on each side to arrange and select the depositions and other papers, which he proposes to deliver to the jury when they retire. He has the custody

Flanders *v.* Davis.

of his own papers, and upon him must rest the responsibility of giving nothing to the jury but what is legal. This is the practice and the common sense of the matter, and it would lead to great difficulty and confusion, if, in the hurry of business after the case is closed and the jury are retiring, each counsel, neglecting the arrangement of his own papers, must be engaged in watching the movements of the opposite counsel, and in seeing that he puts nothing into the hands of the officer which should not be there. From this responsibility he might be relieved only by an assent by the other side that testimony, which had been ruled out, should, nevertheless, go to the jury, or by such conduct on the part of his antagonist as would estop him from saying that the verdict should be set aside. We cannot find an assent here upon the evidence. Mr. Wilcox went to the bar to see if the papers had been selected for the jury, and he cautioned Mr. Morrison that no deposition should go to the jury, any part of which had been ruled incompetent. His object was that nothing incompetent should go to the jury, and so far was he from assenting to all the evidence being submitted, that he selected one deposition which attracted his notice and excepted to it, and it was withdrawn. If there be any view which could prevent the verdict from being set aside on this ground, it would be that the counsel is now estopped from asking the court to interfere. Mr. Wilcox had the bundle in his hands ; he examined them to a certain extent, and then chose to stop ; and, perhaps, it might be said that having gone thus far, he relieved the opposite counsel from the responsibility which otherwise would remain upon him. How this might be it is unnecessary now to settle.

The witness (Morse) was incorrectly excluded. Bradish, under whom he claimed, took his deed from the tenant before the commencement of the suit. The judgment for the plaintiff, then, would be inoperative as to him, for he would not be privy to it. The tenant might have disclaimed that part. This witness might still litigate this question with

the demandant. Had he claimed by a title subsequent to the suit, he would be bound, for he would take subject to the contingency that the title on which his own rested might be defeated, and if it should be, his own title would be affected, of course. This particular view of the question was not taken at the trial, whether he had such a privity as would bind him, but upon examination the exception was taken broadly enough to comprehend it.

For this cause, there must be a new trial.

*Verdict set aside.*